USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  09/16/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rachel Geswaldo, et al.,

                                   Plaintiffs,

               -against-

Mark S. Gottlieb, CPA, et al.,

                                   Defendants.

1:24-cv-02543 (AT) (SDA)

<u>ORDER</u>

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

In connection with that part of the pending motion by Mark S. Gottlieb, CPA and Mark S. Gottlieb, PC (collectively, the "Defendants"), seeking dismissal of the claims asserted against them by Plaintiffs Christine Geswaldo and Rachel Geswaldo (collectively, the "Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, each of Plaintiffs and Defendants shall, no later than September 23, 2024, file a letter to the ECF docket not to exceed five single-spaced pages, addressing the following:

1. How, if at all, the June 29, 2022 Decision and Order in *Geswaldo v. Geswaldo*, Docket No. BER-C-242-20, Super. Ct., Bergen County, Chancery Division, that is annexed hereto as Exhibit A, affects the viability of Plaintiffs' claims; and

2. The monetary damages, if any, Plaintiffs allegedly suffered as a consequence of Defendants' actions or inactions, other than the $12,500.00 that Plaintiffs paid to Defendants.

**SO ORDERED.**

Dated:       New York, New York
             September 16, 2024

_____
**STEWART D. AARON**
**United States Magistrate Judge**

# EXHIBIT A

NOT TO BE PUBLISHED WITHOUT THE APPROVAL
OF THE COMMITTEE ON OPINIONS

| | |
|---|---|
| JOAN GESWALDO, individually, as a Partner in Geswaldo Associates, as a beneficiary of the Joseph Geswaldo Trust Agreement, dated the 17th day of October, 1991, and as the Executrix of the Estate of George R. Geswaldo, <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTINE GESWALDO, individually, as a Partner in Geswaldo Associates and as Co-Trustee of the Joseph Geswaldo Trust Agreement dated the 17th day of October, 1991, and RACHEL GESWALDO, individually, as a Partner in Geswaldo Associates and as Co-Trustee of the Joseph Geswaldo Trust Agreement dated the 17th day of October, 1991, and GESWALDO ASSOCIATES, a New Jersey General Partnership, <br><br> Defendants. | **SUPERIOR COURT OF NEW JERSEY** <br> CHANCERY DIVISION <br> BERGEN COUNTY <br><br> DOCKET NO. BER-C-242-20 <br><br><br> Civil Action <br><br> **F I L E D** <br><br> JUN 29 2022 <br><br> James J. DeLuca, J.S.C. |

## DECISION AFTER TRIAL

**APPEARANCES:**

Robert A. Knee, Esq.
The Knee Law Firm, LLC
21 Main Street, Suite 150
Hackensack, NJ 07601
Counsel for Plaintiff

Michael S. Kimm, Esq.
Kimm Law Firm
333 Sylvan Avenue, Suite 106
Englewood Cliffs, NJ 07632
Counsel for Defendants

## Introduction

Joan Geswaldo ("Joan")[1], individually, as a Partner in Geswaldo Associates (the "Partnership"), as a beneficiary of the Joseph Geswaldo Trust Agreement dated the 17th day of October, 1991 (the "Trust") and as the Executrix of the Estate of George R. Geswaldo[2] (the "Estate"), filed a verified complaint in this action against Christine Geswaldo ("Christine") and Rachel Geswaldo ("Rachel"), individually, as Partners in the Partnership and Co-Trustees of the Trust,[3] seeking to: (i) remove Defendants from serving in any capacity on behalf of the Partnership, (ii) appoint a receiver for the Partnership, (iii) require Defendants to provide an accounting for their activities on behalf of the Partnership and for related relief.  Further, Joan seeks to: (i) remove Defendants as co-trustees of the Trust, (ii) appoint Joan as substitute trustee of the Trust, and (iii) compel Defendants to provide a formal accounting with respect to their activities as Co-Trustees and for related relief.

## Joan's claims regarding Partnership

As to the Partnership, Joan asserts that Defendants have co-managed the Partnership since George's death without having elected a managing partner and have not (i) made partnership distributions to Plaintiff or the Estate or (ii) provided an accounting to Joan with respect to the funds collected and disbursed from the

---

[1] Because of common surnames, parties are referred to by their given names.  The court intends no disrespect to the parties.

[2] George R. Geswaldo ("George"), Joan's husband, died on March 14, 2017.

[3] Christine and Rachel are referred to collectively herein as "Defendants."

Partnership. Joan further claims that Defendants, without authority, entered into, and then agreed to terminate, a contract of sale for the Partnership's real property commonly known as 95 Dell Glen Avenue, Lodi, New Jersey (the "Lodi Property"). Joan asserts that such actions breached the fiduciary duty of Defendants and damaged the Partnership since the sale would have generated a purchase price of $1,550,000.00.

**Joan's Claims regarding the Trust**

With respect to the Trust, Joan asserts that upon the death of Joseph Geswaldo ("Joseph"), the settlor of the Trust, the Trustees were to distribute the assets of the Trust to Christine, Rachel and George. Notwithstanding the terms of the Trust Agreement, no Trust assets were distributed to the beneficiaries upon Joseph's death. Upon George's death, Joan inherited George's interest in the Trust; however, Joan acknowledges that she did not become a co-trustee of the Trust.

According to Joan, since George's death, Defendants have refused to (i) provide Joan with any information about the Trust or (ii) distribute any assets of the Trust to Joan. Further, according to Joan, Defendants have not provided an annual accounting to Joan with respect to the assets of the Trust. Additionally, Joan asserts that Defendants have not provided Joan with the opportunity to use a condominium in Boca Raton, which is owned by the Trust and which has been used by Defendants.[4] Further, Joan asserts that Defendants had the opportunity to sell the Boca Condo in

---

[4] The condominium in Boca Raton is commonly known as 4001 North Ocean Boulevard, Unit B-207, Boca Raton, FL, and is referred to herein as the "Boca Condo."

2017 for $375,000 but failed to do so. As a result, the Trust continues to pay the carrying costs associated with the Boca Condo.

## Defendants' Counterclaims

Defendants assert counterclaims against Joan, individually and as executrix of George's Estate, for breach of the Trust and Partnership Agreement, breach of fiduciary duty, self-dealing, breach of the covenant of good faith and fair dealing, conversion, and fraud. Defendants assert that (i) George embezzled monies from the Partnership during the period that he served as Managing Partner of the Partnership and (ii) Joan conspired with George regarding the collection of rents from the Lodi Property and the depositing of same into their joint personal account.

The court conducted a bench trial in this action and heard testimony from three (3) witnesses, namely, Christine, Rachel and Donald Vogel, Christine's husband. In accordance with R. 1:7-4 of the Rules Governing the Courts of the State of New Jersey (the "Court Rules"), this decision constitutes the court's findings of fact and conclusions of law.

## Background/Prior Litigation

The instant proceeding is not the first action filed by the parties against each other. On May 17, 2017, Christine and Rachel filed a complaint in the Superior Court of New Jersey, Bergen County, Chancery Division (Docket No. BER-C-147-17) (the "Prior Chancery Action"), in which they asserted, among other things, that after Joseph's death in June 2002, George (i) inserted himself into the affairs of the Trust and Partnership, (ii) mismanaged the assets of the Partnership and/or Trust from

Joseph's death in June 2002 until George's death in March 2017, (iii) failed and refused to provide any accounting, (iv) failed and refused to share income, (v) used the Boca Condo as his secondary home, and (vi) shut out Defendants from any activities with respect to the Partnership and Trust. Defendants also asserted in the Prior Chancery Action that George failed to provide an accounting with respect to the Trust and/or Partnership, breached his fiduciary duty as trustee and partner, engaged in self-dealing as a partner and trustee, breached the covenant of good faith and fair dealing, and conversion. Thus, Defendants sought removal of George and anyone who claimed to have succeeded to his role as partner and/or trustee. On July 20, 2017, the Prior Chancery Action was dismissed, without prejudice.

On October 12, 2017, Defendants commenced an action in the Superior Court of New Jersey, Law Division, Bergen County (Docket No. BER-L-6971-17), encaptioned Christine Geswaldo and Rachel Geswaldo v. the Estate of George Geswaldo, Joan Geswaldo, individually and as Executrix of the Estate of George Geswaldo, Docket No. L-6971-17 (the "Law Division Action"), asserting that George and Joan breached the Trust, George and Joan breached the Partnership, George breached his fiduciary duty as a trustee and partner, self-dealing, breach of the covenant of good faith and fair dealing, conversion and fraud. The Law Division Action was dismissed, by stipulation, without prejudice on August 20, 2019.[5]

---

[5] Defendants filed a motion to reinstate the action. By order entered on April 1, 2021, the motion to reinstate was denied, with the court noting that the instant action, which incorporates the allegations of the Law Division action, was now pending before this court.

## Discussion and Analysis

### The Trust

Joseph was the father of George, Rachel and Christine Geswaldo. On October 17, 1991, Joseph executed an agreement (the "Trust Agreement") which created the Trust. **Exhibit P-5** and **Exhibit D-5**. The Trust Agreement provides that upon Joseph's death, his debts, expenses, taxes and other obligations were to be paid. Trust Agreement, Article VI. Joseph died on June 28, 2002. The Trust Agreement provides that after Joseph's obligations are paid, the assets of the Trust were to be distributed in equal shares to the beneficiaries, namely, Christine, George and Rachel (Trust Agreement, Article VII).

Joseph was the original trustee of the Trust. The Trust Agreement (at Article G) provides that income was to be distributed to the beneficiaries as fixed by the Trustee but no less than "quarter-annually." Further, the Trust Agreement (at Article X(E)) requires the trustees to provide an annual accounting. On January 16, 2002, Joseph resigned as trustee. **Exhibit D-5** (Bates P00408). Upon Joseph's withdrawal as trustee, in accordance with Article X (A) of the Trust Agreement, Christine, Rachel and George became co-trustees of the Trust, as well as co-beneficiaries.

The evidence at trial revealed that the Trust currently owns the Boca Condo. Further, the Trust previously owned a 25% interest in Fairfield Park Holding Company, which itself owned real property commonly known as 488 Horseneck Road, Fairfield, New Jersey (the "Fairfield Property"). According to the trial testimony, the

Fairfield Property was sold by Fairfield Park Holding and the proceeds from such sale are being held in escrow.

### **The Partnership**

On December 30, 1992, Christine, George, Rachel and Joseph entered into an agreement (the "Partnership Agreement.") **Exhibit P-3** and **D-3**.  According to the Partnership Agreement, the Partnership was formed to own and manage real estate investments and all activities related thereto.  George was designated as the "managing partner."  Partnership Agreement at ¶3.01(b).  In the event George was unable to serve as managing partner, Joseph was to serve in that capacity.  Ibid. at §3.01(b).  In the event neither George nor Joseph could serve as managing partner, then the remaining partners were to elect a "managing partner."  Ibid.

On or about December 30, 1992, the Partnership acquired the Lodi Property from the Trust.  The Partnership remains the owner of the Lodi Property. Notwithstanding George's designation as the managing partner, Joseph, until his death in June 2002, and with the assistance of Christine, managed the Partnership. The testimony at trial revealed that Joseph's management included the collection of rents, the payment of bills and expenses, the hiring of professionals and other workers to maintain the Lodi Property. After Joseph's death, George managed the Partnership until his own death in March 2017.  Defendants communicated with George approximately twice a year from 2002 to early 2017. According to the trial testimony, George advised Defendants that during the time he served as managing partner, the revenue of the Partnership was insufficient to cover operating expenses of the Lodi

Property.   Further, for the years 2002 to 2015, Defendants received annual K-1 statements from the Partnership provided by George.   **Exhibit D-24**.   Such K-1 statements do not reflect any significant rental income and in most years reflects negative "net rental real estate income."

## Joan's claims related to the Partnership

As noted above, in her complaint in this action with respect to the Partnership, Joan seeks (i) removal of Defendants from serving in any capacity on behalf of the Partnership, (ii) the appointment of a receiver for the Partnership, and (iii) an order requiring Defendants to provide an accounting for their activities on behalf of the Partnership.   A court of equity has both inherent and statutory power to dissolve a partnership, distribute its assets, and order an accounting.   Fishman v. Raphael & Fishman, 141 N.J. Eq. 576 (Ch. Div. 1948). The dissolution of a partnership is governed by Article VIII of the Revised Uniform Partnership Act ("RUPA.")   N.J.S.A. 42:1A-39, et seq.   Under the RUPA, dissolution results only under specific circumstances, such as when an event makes it unlawful for the partnership business to be continued or a partner applies for and receives a judicial determination that the economic purpose of the partnership is likely to be unreasonably frustrated.   N.J.S.A. 42:1A-39(d) & (e)(1).   Additional events triggering dissolution may be provided for in the partnership agreement.   N.J.S.A. 42:1A-39(c).

N.J.S.A. 42:1A-39(e) provides for the dissolution of a partnership by court order on application of a partner in the following situations:

a. when the economic purpose of the partnership is likely to be unreasonably frustrated;

b. when another partner has engaged in conduct relating to the partnership business which makes it unreasonable to carry on the business of the partnership with that partner; and

c. it is not otherwise practicable to carry on the partnership business in conformity with the partnership agreement.

A court of equity has the power to supervise the dissolution of a partnership. Although N.J.S.A. 42:4-7 specifically provides for the appointment of a receiver in the case of dissolution of a partnership, a court of equity may, in its discretion, appoint a receiver to take control of the assets whenever it appears to be necessary to protect the interest of the parties.   Hamilton v. Hood, 138 N.J. Eq. 485, 487 (E. & A. 1946) (declining to appoint a receiver but noting "[t]hat Chancery has the jurisdiction in proper case to appoint a temporary receiver is beyond question.");   Local No. 11 of Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers v. McKee, 114 N.J. Eq. 555, 565-66 (Ch. 1933). ("Chancery, under its general equity powers, can appoint a receiver . . . to hold and preserve [an entity's] assets and operate its business in a legal manner . . . . [S]uch power extends to the conduct and operation of unincorporated associations and partnerships.") Appointment of a receiver may be employed as a remedy to counteract minority oppression in the dissolution of both general and limited partnerships. Muscarelle v. Castano, 302 N.J. Super. 276, 285 (App. Div. 1997).

Further, the RUPA permits a partner to bring suit against a partnership or another partner to enforce rights conferred either by the partnership agreement or the Act.   N.J.S.A. 42:1A-25(b). Under the RUPA, an accounting is no longer a

prerequisite to the availability of other remedies against the partnership or the other

partners. Here, after George's death in March 2017, Defendants completely shut

Joan out from information relating to the Partnership.

George's Last Will and Testament dated July 18, 2006 provides that upon his

death, George's estate, both real and personal, was bequeathed to Joan. **Exhibit P-**
**4**. Such interests included George's interest in the Partnership and George's right to

receive distributions pursuant to the Partnership. The Partnership Agreement (at

§10.01(b)) provides that:

> "Any Partner may transfer all or part of his interest in the Partnership
> to his or her spouse or children without the prior approval of any of the
> Partners or the Partnership."

> Further, §11.01 of the Partnership Agreement provides that:

> The death of a Partner shall not dissolve the Partnership. If a Partner
> dies, the personal representative or other successor in interest or the
> deceased Partner shall either (a) succeed and be subject to all the
> deceased Partner's rights and obligations under this Agreement, if the
> requirements of Article X have been met, or (2) of the requirements of
> Article X have not been met, such successor in interest shall only be an
> assignee of the deceased Partner's interest.

Accordingly. Joan became a partner in the Partnership on George's death and was

and remains entitled to be treated as a partner.

Notwithstanding Joan's clear status as a partner, Defendants chose to ignore

her rights and failed to make any partnership distributions to her, provide her with

K-1 partnership statements or provide any financial information or any other records

related to the Partnership. Further, in spite of the unambiguous terms of the

Partnership Agreement, there has been no effort to appoint a managing partner for the Partnership.

Further, Christine and Rachel admitted at trial that they failed to file tax returns for the Partnership for the years 2016 to the present. Additionally, serious questions are raised by the actions of Defendants in entering into a contract to sell the Lodi Property without advising Joan of same in advance of the execution of the contract of sale. After the title company advised that all partners, including Joan, would be required to consent to the sale transaction as contemplated by the Partnership Agreement, it appears that Joan insisted on an agreement that she receive her proportionate interest in the sale proceeds before her consent was provided. Rather than agreeing to distribute sale proceeds to Joan, Defendants allowed the prospective purchaser to terminate the contract, which had a purchase price of $1,150,000.

As noted in Muscarelle v. Castano, 302 N.J. Super. at 283-284,

> It is axiomatic that the relationship of co-partners is "one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits." Stark v. Reingold, 18 N.J. 251, 261 (1955) (quoting Bowne v. Windsor, 106 N.J. Eq. 415, 4164 (Ch.1930), aff'd, 108 N.J. Eq. 274 (E. & A.1931)). Partners owe to one another "the duty of the finest loyalty." Id. at 261 (quoting Meinhard v. Salmon, 249 N.Y. 458, 463-64. Many business methods "permissible in [the] workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties." Ibid. A partner's duty to his counterpart is stricter than the morals of the market place. "Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." Ibid. This time-tested principle is unbending and inveterate, and "continues with undiminished vitality." Silverstein v. Last, 156 N.J. Super. 145, 152 (App.Div.1978).

Here, Defendants ignored their partner, Joan, and restricted her rights to

Page **11** of 19

information regarding the Partnership and distributions from the Partnership. Such actions are a clear breach of Defendants' fiduciary duties to Joan and cannot continue.

The failure of Defendants to act in accordance with their fiduciary duties requires that they be removed from their position as de facto managing partners of the Partnership. In order to move forward with the liquidation of the Partnership and its assets, the court hereby appoints Richard H. Weiner, Esq. of Aronsohn, Weiner, Salerno & Kaufman, P.C. to serve as receiver of the Partnership, <u>without bond</u>, in order to, among other things, liquidate Partnership assets, including, but not limited to, listing the Lodi Property for sale, soliciting offers as to same, entering into contracts with respect to and closing the sale of the Lodi Property,[6] and ultimately distributing the assets of the Partnership to its partners,[7] The amounts distributed to the partners shall be subject to adjustments as determined by the court.

However, based upon the information currently available, the court is not in a position to determine what adjustments/damages, if any, regarding the distributions to each partner may be appropriate.[8] In order to allow the court to make such determinations, Defendants shall serve a formal accounting with respect to their

---

[6] Any contract for the sale of the Lodi Property is subject to court approval on notice to all parties in interest and any contract of sale shall so provide.

[7] The Receiver is authorized to manage all Partnership's assets, including the Lodi Property, pending their liquidation.

[8] This is particularly true in connection with the determination by Christine and Rachel to allow a prospective purchaser of the Lodi Property to terminate a sales contract having a purchase price of $1,550,000. Once the Lodi Property is sold by the Receiver, it can be determined if Joan suffered any damages as a result of the terminated contract.

activities as de facto co-managing partners of the Partnership from March 14, 2017, the date of George's death to the present.  <u>Wear-Ever Aluminum, Inc. v. Towncraft Industries, Inc.</u>, 75 N.J. Super. 135, 150 (Ch. Div. 1962).[9]

Such formal accounting shall be served on all parties, including the Receiver, no later than August 19, 2022.  The name and scope of such accounting shall include the monies received and disbursed by the Partnership from March 14, 2017 to the present.  Defendants shall make available to Plaintiff and her counsel all account statements, cancelled checks, ledgers or other documents in whatever format maintained, including electronic format, so that Plaintiff and her representatives may confirm the accuracy of such accounting.  Such accounting shall also include a list of disbursement/payments from the Partnership made to or for the benefit of either of the Defendants or Plaintiff during the applicable period.

The parties and their respective agents, employees, representatives and attorneys shall fully cooperate with the requests and activities of the Receiver.  No later than five (5) days from the date this Decision and related Judgment are entered, Defendants shall turn over to the Receiver all information and documentation with respect to the assets of the Partnership, including the Lodi Property.  Further, all bank accounts and other assets of the Partnership in the possession or control of Defendants, their respective agents, employees, representatives and attorneys shall

---

[9] In connection with such accounting, the Receiver may, if he deems it advisable, retain professionals, including accountants to review such accountings.  The Receiver may also retain other professionals, including attorneys, as he deems necessary in order to perform his duties and responsibilities as Receiver.

be promptly turned over to the Receiver, who shall be the sole signatory on any such accounts.

## Joan's claims related to the Trust

As noted above, Joan asserts that upon Joseph's death the Trustees were to distribute the assets in the Trust to Christine, Rachel and George. Such distributions did not occur. Since George's death in March 2017, Christine and Rachel have not provided Joan with any information about the Trust, including the annual accounting with respect to the assets of the Trust as required by the Trust Agreement. Additionally, Joan has not had the opportunity to use the Boca Condo which has been used by Defendants. Further, Defendants had the opportunity to sell the Boca Condo in 2017 for $375,000 but failed to do so. As a result, the Trust continues to pay carrying costs associated with the Boca Condo.

The court recognizes that the Trust was created under Florida law and is governed by Florida law. However, the activities of Defendants in dealing with the assets of the Trust are contrary to the Trust Agreement which provides that upon the death of Joseph, the assets of the Trust were to be distributed equally among the beneficiaries, Christine, Rachel and George or George's successor beneficiary (Joan). No one adequately explained to the court why such distribution did not occur in 2002 when Joseph died and all beneficiaries, including George, were still alive. The failure to abide by the Trust Agreement and distribute the assets of the Trust will no longer be allowed to continue. Thus, the court hereby directs that Defendants immediately

list the Boca Condo for sale. Any sale shall be subject to this court's approval and the contract of sale shall so provide.

However, unlike the Partnership, Defendants will not be removed as trustees of the Trust. In particular, the court notes that while he was alive George made no effort to sell the Boca Condo and was content to continue to have the Partnership pay the costs and expenses related to the Boca Condo. Defendants continued such activity after George's death. Nevertheless, pending the sale of the Boca Condo, no party to this action, including their respective family members, friends and acquaintances, agents, employees, representatives and attorneys, shall be entitled to use the Boca Condo for their personal use. The costs associated with the assets of the Trust shall continue to be paid in accordance with past practices.

Defendants shall keep Plaintiff and her counsel fully informed as to the status of their efforts to sell the Boca Condo. Defendants shall promptly provide Plaintiff and her counsel with a fully executed listing agreement and any contract of sale with respect to the Boca Property. Defendants shall advise Plaintiff and her counsel at least three (3) weeks prior to the sale of the Boca Condo. The net sale proceeds, after paying all reasonable and necessary costs of closing, shall be held in escrow pending further order of this court.

Further, Defendants shall serve a formal accounting with respect to their activities as Trustees of the Trust for the period from March 14, 2017, the date of George's death, to the present. Such formal accounting shall be served on all parties

in interest, including the Receiver,[10] no later than August 19, 2022.  Further, within seven (7) days of the date hereof, Defendants shall provide to Joan and the Receiver an inventory as to any assets of the Trust, including the Boca Condo and the Fairfield Property.

## Defendants' claims against George's Estate and Joan

As noted above, Defendants assert that (i) while he served as Managing Partner of the Partnership, George embezzled monies from the Partnership and (ii) Joan conspired with George regarding the collection of rents from the Lodi Property and the depositing of same into their joint personal account.

The evidence at trial revealed that Defendants, as general partners of the Partnership, knew or should have known that they were entitled to full and complete access to the books and records of the Partnership.  Article IX of the Partnership Agreement provides that the managing partner was required to maintain books and records and provide access to such books and records to the other partners.  During the period that George served as managing partner of the Partnership, he advised Defendants that the Partnership was unable to meet its financial obligations.  Indeed, the K-1 statements provided to Defendants (**Exhibit D-24**) reflect no income to the Partnership.  Additionally, Defendants knew or should have known that they were

---

[10] The Trust accounting is being provided to the Receiver of the Partnership for informational purposes only and the Receiver is not expected to review or comment on the Trust accounting unless so requested by the court or unless the Receiver deems it appropriate.

entitled to accountings related to the Trust.  Further, as Co-Trustees of the Trust,
Defendants knew or should have known the financial activities of the Trust.

As a result, Defendants' counterclaims for breach of the Trust Agreement,
breach of the Partnership Agreement, breach of the covenant of good faith and fair
dealing and conversion, are barred by the statute of limitations set forth in N.J.S.A.
2A:14-1 because Defendants had the ability more than six (6) years before the filing
of this action to review George's activities with respect to the Partnership and/or
Trust and chose to take no action.  Rather, Defendants waited until after George's
death before pursuing such claims.  Thus, Defendants' counterclaims are barred by
the applicable statute of limitations and/or laches.  <u>Fox v. Millman</u>, 210 N.J. 401
(2017).

Further, Defendants either knew or should have known of the financial losses
of the Partnership as early as 2002 when George admittedly advised then that the
Partnership did not have sufficient cash flow to pay its expenses.  Based upon the
testimony presented at trial, the court rejects the assertion of Defendants that it was
not until the delivery of discovery in the Prior Chancery Action that they became
aware of George's activities. The counterclaim for breach of fiduciary duty which
results in purely economic loss and fraud is subject to the six (6) year statute of
limitations set forth in N.J.S.A. 2A:14-1 and accrued on the date of the omission
which gives rise to the claim or on the date on which the act or omission reasonably
should have been discovered.  Since the Defendants had access to the books and

records of the Partnership and are Co-Trustees of the Trust, they could and should have reasonably discovered the actions of which they are now complaining.[11]

Finally, even if Defendants' claims are not barred by the applicable statute of limitations or laches, the evidence presented by Defendants at trial does not support the claim that they suffered any damage as a result of the actions/inactions of George or Joan. The evidence does not support Defendants' claim that George or Joan improperly took any monies belonging to the Partnership or the Trust or that the intermingling of funds in their personal accounts damaged the Defendants. The court notes that Defendants presented no testimony from any forensic accountant or other professional to support their claims against George and/or Joan. The testimony of the witnesses relied upon by Defendants was insufficient to support their claim for damages.

## Conclusion

For the reasons set forth herein, a judgment is entered in favor of Plaintiff and against Defendants as follows: (1) Richard H. Weiner, Esq. is hereby appointed receiver for the Partnership in order to liquidate all Partnership assets, including the Lodi Property. Pending sale/liquidation of the Lodi Property or any other asset of the Partnership, Mr. Weiner is authorized to manage such assets; (2) No later than August 19, 2022, Defendants are to provide a formal accounting to Plaintiff's counsel

---

[11] The court rejects the Defendants' assertion that this court does not have the ability to take any action with respect to the Trust because it is governed by Florida law. The actions of Defendants all took place in New Jersey. Defendants and Plaintiff are residents of New Jersey. Thus, the court has more than a sufficient basis to act in connection with the activities of Defendants.

and the Receiver as to the actions on behalf of the Partnership from March 17, 2017 to the present; (3) As to the Trust, the request to remove Christine and Rachel as co-trustees of the Trust is denied; (4) No later than August 19, 2022, Defendants shall provide a formal accounting to Plaintiff and Receiver as to their actions with respect to the Trust from March 17, 2017 to the present. As to Plaintiff's claims for damages related to the Partnership and/or Trust, such claims shall abide the delivery of the accountings required pursuant to this Decision. As to Defendants' counterclaims, the court finds that Defendants have no cause of action against Plaintiff and such counterclaims are dismissed with prejudice. A Judgment consistent with this Decision After Trial is being issued simultaneously herewith.

Dated: June 29, 2022

Hon. James J. DeLuca, J.S.C.